UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

_____
                                   )
NEMIAH ARMSTRONG, JR.,             )
                                   )
        Plaintiff,                 )
                                   )
    v.                             )   C.A. No. 17-111 S
                                   )
ROBERT MOROE and ROGER BYRON,      )
                                   )
        Defendants.                )
_____)

## ORDER

WILLIAM E. SMITH, Chief Judge.

Magistrate Judge Patricia A. Sullivan filed a Report and Recommendation ("R&R") on July 25, 2017 (ECF No. 8) recommending that the Court provisionally grant Plaintiff's Motion for Leave to Proceed in forma pauperis ("IFP Application") (ECF No. 2) but that Plaintiff's Amended Complaint (ECF No. 6) fails to state a claim upon which relief may be granted.  The Magistrate Judge also recommended providing Plaintiff with thirty days to file a second amended complaint that corrects the deficiencies in the amended complaint as outlined in the R&R.

Neither party has filed an objection to the R&R.  After carefully reviewing Plaintiff's Amended Complaint, his IFP Application and the R&R, this Court ACCEPTS the R&R in its entirety and adopts the reasoning set forth therein. Plaintiff's IFP Application (ECF No. 2) is GRANTED.  Plaintiff

has thirty days from the date of this Order to file a second amended complaint that cures the deficiencies described in the R&R. If the second amended complaint is deficient or if Plaintiff fails to file a second amended complaint within thirty days, then the Amended Complaint (ECF No. 6) shall be summarily dismissed and the case shall be terminated.

IT IS SO ORDERED.

/s/ William E. Smith
William E. Smith
Chief Judge
Date: August 11, 2017

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

NEMIAH ARMSTRONG, JR., :
    Plaintiff, :
     :
v. : C.A. No. 17-111S
     :
ROBERT MOROE and ROGER BYRON, :
    Defendants. :

**REPORT AND RECOMMENDATION**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

On March 22, 2017, Plaintiff Nemiah Armstrong filed *pro se* a complaint, along with a motion for leave to proceed *in forma pauperis* ("IFP") (ECF No. 2) and a motion to appoint counsel (ECF No. 3). Both motions have been referred to me pursuant to 28 U.S.C. § 636(b)(1). Plaintiff has now resolved the confusion caused by his failure to include the page that stated the factual allegations supporting his claim by filing what the Court has labeled as his "Amended Complaint." ECF No. 6. Accordingly, these motion are now ripe for decision.

Plaintiff unquestionably qualifies for IFP status; thus, if this case survives screening, I recommend that the IFP motion be granted. However, the IFP motion renders this case subject to preliminary screening pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Having reviewed the Amended Complaint with the liberality required in any case with a *pro se* plaintiff, Hughes v. Rowe, 449 U.S. 5, 9 (1980); Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (*per curiam*), I recommend that it be summarily dismissed without prejudice for failing to state a claim on which relief may be granted, after Plaintiff has been afforded an opportunity to amend. In light of this recommendation, I also recommend that Plaintiff's motion to appoint counsel be denied as moot.

I.  **Background**

In his IFP application, Plaintiff alleges that he is a disabled individual, while the Amended Complaint provides that he lives in an unspecified "housing community" and that he was moved ("evicted") to a different housing unit that was "not appropriate for [his] medical disability." ECF No. 6 at 7.[1] However, nothing that he has filed includes any factual allegations from which the Court might discern the nature of the disability or whether it plausibly could establish the foundation for a colorable claim. Nor does the Amended Complaint provide any facts at all to establish that he was entitled to and denied an accommodation by a federally funded housing authority or by a landlord legally obliged to make such accommodations. Nor does it provide any plausible facts establishing how the named defendants might be legally responsible for the denial of an accommodation beyond the vague assertion that they were "working there."

The attachments to the Amended Complaint suggest that Plaintiff may already have initiated this same claim with the assistance of counsel, but then abandoned it, in that an attached letter establishes that Plaintiff did obtain legal assistance culminating in January 2016 from Rhode Island Legal Services in connection with a "grievance hearing at the Woonsocket Housing Authority." ECF No. 6 at 10. However, that engagement ended when Plaintiff advised his attorney that he did not wish to attend a "second or continued" hearing. Id. Whether this failure to appear is fatal to the housing-based claim Plaintiff has tried to include in his Amended Complaint is impossible to say.

A principal focus of the Amended Complaint is an incident in 2004, during which Plaintiff alleges that he was "brutally attacked and beaten" by police officers, one of whom is

---

[1] An identical page is located at ECF No. 6 at 30.

named as a defendant in this case, Mr. Roger Byron. ECF No. 6 at 7. Any claim based on this incident appears, on the face of the Amended Complaint, to border on frivolous in that it is doomed, potentially by the doctrine of claim preclusion, and certainly by any applicable statute of limitations. While the pleading vaguely asserts that the case "was taken to court," but he could not afford to keep his lawyer and dropped the case "after there was a charge of $6,000 . . . and there were no consequences for those individuals," ECF No. 6 at 7, the attachments to the Amended Complaint tell a somewhat clearer and different story. It appears that Plaintiff was charged with resisting arrest in 2004 but the charge was dismissed and the record of it expunged. Id. at 14, 16. However, Plaintiff's civil action arising from the incident, brought with the assistance of counsel, was unsuccessful in that an award of $5435 in attorney's fees was made in favor of the defendants and, when Plaintiff failed to appear to explain why he had not paid this fee award, his case was dismissed and his attorney's motion to withdraw was approved by the court. ECF No. 6 at 15. The Amended Complaint alleges that it seeks to reassert these judicially terminated claims from 2004 against Mr. Byron. It is unclear whether Plaintiff has ever paid the amount required by the order of the state court in 2004, including whether it is a debt is still owed to Mr. Byron.

The third focus of the Amended Complaint is a vague and conclusory catalog of the alleged conduct of the two defendants. Plaintiff alleges that he has lived in "the same housing community" all his life and had no problems until both defendants – the same Mr. Byron, who is claimed to have participated in the 2004 incident, as well as Mr. Robert Moroe, who does not appear to be accused of having been involved in the 2004 incident – started "working there" in unspecified positions. ECF No. 6 at 7. Against Mr. Moroe, the Amended Complaint alleges that he has used "fo[u]l language," "stalk[ed]/film[ed]" Plaintiff, harassed and threatened to sue the

3

agency where Plaintiff volunteers, asked for Plaintiff's personal information, had Plaintiff's car towed, wrote a letter that falsely claimed that Plaintiff's son could not visit, and defamed, embarrassed and humiliated Plaintiff.  Id.  Against Mr. Byron, aside from the injury arising from the 2004 incident, the Amended Complaint alleges that he arranged to have Plaintiff's car towed, called Plaintiff "racial slurs," "had [Plaintiff] evicted" (apparently from one unit to another that Plaintiff claims is unsuited to his disability) and sat in front of Plaintiff's house on March 6 of an unspecified year, which Plaintiff found to be intimidating.  Id.  The Amended Complaint contains no plausible facts permitting the inference that this conduct is actionable or that either of the named defendants is somehow legally responsible.

Based on these allegations, Plaintiff seeks to "finally attain support and validation that these have been acts of racism and harassment."  ECF No. 6 at 7.  He also seeks monetary damages for pain and suffering and defamation.  He asks the Court to provide a remedy that acknowledges the falsity of Defendants' statement that he (Plaintiff) is "a liar and a man on a witch hunt."  Id.  To invoke federal question jurisdiction,[2] on his civil cover sheet, Plaintiff wrote "1983," ECF No. 6 at 24, presumably reflecting his intent to rely on 42 U.S.C. § 1983, although the Amended Complaint does not refer to any claims grounded in the United States Constitution. In the body of the Amended Complaint, Plaintiff states that he is relying on four federal statutes and various "Articles" that appear to relate to housing.  They are listed by Plaintiff in the Amended Complaint as follows:

1. "Section 818 of the fair housing act."
2. "804F3B of title VIII of the civil rights act of 1968."
3. "42 U.S.C. 361o(8)."

---

[2] Plaintiff does not seek to invoke the Court's diversity jurisdiction, nor could he.  His civil cover sheet alleges that he and both Defendants all live in Rhode Island. ECF No. 6 at 24.

    4.        "VI of the Civil Rights Act of 1964 [42 USS. 2000d-2000d-4)."

    5.        "Article VIII. leasing policies 4-34 additions to the household and visitors[;] Article XVI Grievance procedure 4-66, 4-67, 4-68[,] 4-44[;] Article 12 transfer policy 4-39(c)[,] 4-40-(c-1) [and] 4-41-(3-a)."

ECF No. 6 at 27. The Court's analysis of these references leads it to conclude that Plaintiff principally seeks to invoke the protections of the Fair Housing Act ("FHA"). The FHA was enacted as the Civil Rights Act of 1968, 42 U.S.C. § 3601, *et seq*. Plaintiff's legal references suggest that he is relying on it to invoke his right to bring a private action pursuant to 42 U.S.C. § 3613(a); his right pursuant to 42 U.S.C. § 3604(f)(3)(B) to reasonable accommodation as necessary to afford him an equal opportunity to use and enjoy a dwelling; and his right pursuant to 42 U.S.C. § 3617 to be free of coercion, threats or intimidation based on the exercise of his rights under the FHA. In addition to the FHA, Plaintiff also relies on Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, *et seq.*, which bars recipients of federal assistance from engaging in racial discrimination. Finally, the referenced "Articles" appear to be the policies adopted by the Woonsocket Housing Authority, which address such matters as who may occupy a dwelling unit, how to transfer a tenant to a unit that accommodates a disability and how to present a grievance to the Housing Authority.

## II.    Law and Analysis

The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A is the same used when ruling on a Rule 12(b)(6) motion to dismiss. Hodge v. Murphy, 808 F. Supp. 2d 405, 408 (D.R.I. 2011). To survive a motion to dismiss, a complaint must contain sufficient factual allegations to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A well-pled complaint must affirmatively state a basis for

federal jurisdiction, typically either a federal question or complete diversity of citizenship. 28 U.S.C. §§ 1331, 1332; see Hall v. Curran, Civil No. 08-cv-350-JL, 2009 WL 112552, at *2 (D.N.H. Jan 16, 2009) ("[t]o establish diversity jurisdiction, a complaint must allege complete diversity of citizenship between plaintiff and defendants").

Plaintiff's attempt to assert a claim under Title VI of the Civil Rights Act of 1964 may quickly be resolved – Title VI does not support a private right of action. This question was definitively determined by the United States Supreme Court in Alexander v. Sandoval, 532 U.S. 275 (2001): "[n]either as originally enacted nor as later amended does Title VI display an intent to create a freestanding private right of action to enforce regulations promulgated under § 602 . . . [w]e therefore hold that no such right of action exists." Id. at 293. In any event, to the extent that Plaintiff intended to state a claim based on racial discrimination, the reference to nothing more than "racial slurs" and "acts of racism" is insufficient as a matter of law. See Caddy v. J.P. Morgan Chase Bank, 237 F. App'x 343, 346 n.3 (10th Cir. 2007) (elements of *prima facie* case alleging housing racial discrimination under the FHA are: "(1) [claimant] is a member of a racial minority; (2) she applied for and was qualified to rent an apartment [from defendant]; (3) she was denied the opportunity to rent or to inspect or negotiate for the rental of [an apartment]; and (4) the housing opportunity remained available"); Kilgore v. Providence Place Mall, C.A. No. 16-135S, 2016 WL 3092990, at *3-4 (D.R.I. Apr. 1, 2016) (no matter what statute provides legal basis for claim, viable allegation of discrimination or harassment based on race must include more than allegations that plaintiff is in racially protected class and was harassed), adopted, 2016 WL 3093450 (D.R.I. June 1, 2016). The Amended Complaint does not even purport to allege that Plaintiff is in a racially protected class.

By contrast, Plaintiff's invocation of the FHA is conceivably viable. The FHA prohibits discriminatory housing practices based on a person's handicap. Batista v. Cooperativa De Vivienda Jardines De San Ignacio, 776 F.3d 38, 42 (1st Cir. 2015) (citing 42 U.S.C. § 3604(f)(2)). It bans such discrimination "in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap" of an individual. 42 U.S.C. § 3604(f)(2). Discrimination includes a "refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford [handicapped persons] equal opportunity to use and enjoy a dwelling." Id. § 3604(f)(3)(B); Astralis Condo. Ass'n v. Sec'y, U.S. Dep't of Hous. & Urban Dev., 620 F.3d 62, 66 (1st Cir. 2010). For a disparate treatment claim under FHA, the claimant must "produce either (a) direct evidence of discriminatory intent or (b) indirect evidence creating an inference of discriminatory intent." Batista v. Cooperativa De Vivienda Jardines De San Ignacio, 776 F.3d 38, 43 (1st Cir. 2015). The FHA also contemplates claims based on retaliation through coercion, threats or intimidation on account of the exercise of the right to seek to redress housing discrimination. Id. at 44-45; see Schroeder v. De Bertolo, 879 F. Supp. 173, 178 (D.P.R. 1995).

To state a plausible claim for housing discrimination under FHA, a complaint must contain plausible facts sufficient to establish how the claimant is qualified as a disabled person, how he was subjected to discrimination, whether he was denied an accommodation, what was the accommodation that was "reasonable and necessary" but denied, whether, how and by whom he was coerced, threatened and intimidated on account of his assertion of his FHA rights, and why the individuals named as defendants are potentially responsible. Batista, 776 F.3d at 42-45. Plaintiff carries the burden of demonstrating that he has an impairment that limits a major life

activity, as well as pleading with sufficient particularity all the other elements of each claim. See Candlehouse, Inc. v. Town of Vestal, Civil Action No. 3:11-CV-0093 (DEP), 2013 WL 1867114, at *8 (N.D.N.Y. May 3, 2013). In its present form, the Amended Complaint accomplishes none of these goals; therefore, it fails to state a claim under the FHA.

While the failure to state a claim for the reasons set out above requires that this action must be dismissed, to guide Plaintiff should he attempt to cure these deficiencies by repleading, the Court also notes that the Amended Complaint fails to comply with the basic pleading requirements in Fed. R. Civ. P. 8(a)(2) and 10(a)-(b), which mandate that a complaint must set forth with specificity the "who, what, when, where, and why" information necessary for a plausible claim. See Educadores Puertorriquenos en Accion v. Hernandez, 367 F.3d 61, 68 (1st Cir. 2004) ("complaint should at least set forth minimal facts as to who did what to whom, when, where, and why"). As such, it fails to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Twombly, 550 U.S. at 555 (alteration in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)); see Iqbal, 556 U.S. at 680 (complaint must nudge claims from conceivable to plausible). If Plaintiff decides to file an amended complaint, he must cure all of these deficits or face the risk of summary dismissal.

### III. Conclusion

Based on the foregoing, Plaintiff's IFP motion (ECF No. 2) is provisionally granted. However, I find that the Amended Complaint should be dismissed at screening based on its failure to state a claim. See 28 U.S.C. § 1915(e)(2). Nevertheless, before the Court takes that step, I recommend that the Court provide Plaintiff with thirty days from the adoption of this report and recommendation to file a second amended complaint. Brown v. Rhode Island, 511 F. App'x 4, 5, 7 (1st Cir. 2013) (*per curiam*). If he fails to do so or if he files a new complaint that

is still deficient, I recommend that the Amended Complaint (ECF No. 6) be summarily dismissed without prejudice and that the case be terminated.  In light of this recommendation, Plaintiff's motion for appointment of counsel (ECF No. 3) is denied as moot.

Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days after its service on the objecting party.  See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision.  See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
July 25, 2017